UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEENA CRYSTAL LIEBMAN and ANDRE PETER CAMPBELL,<br>    *Plaintiffs*,<br>    *v.*<br>BETTER WAY WHOLESALE AUTOS, INC.,<br>    *Defendant*. | Civil No. 3:15cv1263 (JBA)<br><br>March 21, 2017 |

**RULING DENYING DEFENDANT'S MOTION TO VACATE ARBITRATION AWARD AND GRANTING PLAINTIFFS' MOTION FOR JUDGMENT**

Plaintiffs Deena Crystal Liebman and Andre Peter Campbell applied [Doc. # 1] to this Court on August 24, 2015 for an order compelling arbitration of their claims against Defendant, A Better Way Wholesale Autos, Inc., asserting jurisdiction pursuant to 28 U.S.C. § 1332. That Application was granted [Doc. # 8] by agreement on September 28, 2015 and an arbitration (the "Arbitration") was conducted before the American Arbitration Association ("AAA"), which resulted in the Arbitrator finding that Defendant had violated Conn. Gen Stat. § 14-62(g) and the Connecticut Unfair Trade Practices Act ("CUTPA") and issuing an arbitration award (the "Arbitrator's Award") in favor of Plaintiffs. Plaintiffs then moved [Doc. # 10] for judgment, and Defendant opposed and separately moved [Doc. # 12] to vacate the arbitration award. For the reasons that follow, Defendant's Motion to Vacate is denied and Plaintiffs' Motion for Judgment is granted.

I. **Background**[1]

The AAA appointed Attorney Steven Kaplan as arbitrator (the "Arbitrator") and the parties agreed to waive oral hearings and instead have the dispute determined upon written submission. (*See* Ex. A to Def.'s Mot. to Vacate.)

The underlying dispute stems from Plaintiffs' purchase of a 2006 Subaru Tribeca (the "Vehicle" or the "Subaru") from Defendant on March 30, 2015. (*See* Ex. A to Pl.'s Mot. to Vacate ¶ 1; Ex. B (Def.'s Mem. Supp. Mot. to Vacate) to Def.'s Mot. to Vacate at 1.) On the Retail Purchase Order, Plaintiffs checked the box and signed acknowledging the car was sold "AS IS," as well as the portion of the form indicating there were no promises made to the customer. (Ex. A (Retail Purchase Order for Motor Vehicle) to Statement of Plaintiffs (attached to Pl.'s Opp'n as Ex. B).) However, Plaintiffs represent that they purchased the Vehicle after being assured by a salesperson that Defendant was "required to follow state safety inspection laws and that it has a procedure to make all necessary safety repairs before vehicles are sold." (Ex. C (Plaintiffs' Pre-Arbitration Hearing Memorandum) to Miner Aff. [Doc. # 13-1] at 2.) Based upon this representation and others, including that the Vehicle was "in condition for legal operation on any highway" in Connecticut (Ex. C (K-208 Form) to Def.'s Mot. to Vacate), Plaintiffs decided to purchase the

---

[1] The Arbitrator made only limited findings of fact, which are referenced where relevant and provided. (*See* Ex. A (Arbitrator's Award) to Pl.'s Mot. [Doc. # 12] to Vacate.) Plaintiff's Pre-Arbitration Memorandum asserts that Defendant did not submit any expert reports, witness affidavits, or supplemental exhibits, and therefore argued that Plaintiff's evidence was undisputed. (Ex. C (Plaintffs' Pre-Arbitration Hearing Memorandum) to Miner Aff. [Doc. # 13-1] at 4.) The Court draws its facts for purposes of these Motions first from the Arbitrator's Award, with details filled in from the parties' submissions to the Arbitrator and to this Court.

Tribeca at a purchase price of $7,812[2]. (Ex. C to Miner Aff. at 2.) They then paid an additional $1,155.99 to have it shipped to their home in California, where it arrived on April 21, 2015. (*Id.*)

Driving the Vehicle upon delivery in California, Plaintiffs heard loud noises and felt vibrations, and consequently brought the Tribeca to Mountain View Tire & Service for an inspection, where it was determined that the lower control arm bushings were broken, the right front axle was leaking, the transmission mount was broken, coolant was leaking at the head gasket, and there was corrosion on the undercarriage of the Vehicle. (*Id.*) Plaintiffs, in order to satisfy Defendant, agreed to take the Vehicle to a Subaru dealership for an additional inspection, which they did on April 28 at Palm Springs Subaru.[3] (*Id.* at 3.) That inspection noted similar problems as those identified by Mountain View Tire, as well as some additional ones. (Ex. A to Def.'s Mot. to Vacate ¶ 4.) Plaintiffs brought the Vehicle back to Mountain View on July 20, 2015 for a more extensive inspection, where the mechanic found that the "VEHICLE IS NOT ROADWORTHY AND IS UNSAFE TO OPERATE." (Ex. P (Mountain View Tire & Auto Service Vehicle Inspection) to Ex. C of Pl.'s Opp'n at 1) (emphasis in original.) The report indicated that in order to comply with California highway safety requirements, the left rear brake rotor, front strut mounts, and the front lower and rear upper control arm bushings would need to be repaired. (*Id.*) The report further states that the defects would have been discovered if Defendant had performed a safety inspection. (*Id.*; Ex. A to Def.'s Mot. to Vacate ¶ 5.)

---

[2] Subsequently, during several conversations, Defendant assured Plaintiffs that the Subaru had passed a Connecticut safety check, but despite Plaintiffs' multiple requests, never furnished copies of the records documenting the repairs. (Ex. C to Miner Aff. at 2.)

[3] The mileage at the time of this inspection was noted as 131,815, only 65 miles more than the mileage at delivery. (*Id.*)

Plaintiffs alleged violations of Conn. Gen. Stat. § 14-62(g), requiring safety inspections and certification of the Vehicle's condition, express warranties as to the Vehicle's condition, and CUTPA. (Ex. C to Miner Aff. at 7; Ex. A to Def.'s Mot. to Vacate ¶ 1.) Plaintiffs therefore sought damages for repairing safety-related defects and loss of use, and additionally sought punitive damages pursuant to CUTPA, plus attorney's fees and costs. (*See* Ex. A to Def.'s Mot. to Vacate ¶ 1.)

The Arbitrator found "credible the written evidence submitted by [Plaintiffs] as to the condition of the Vehicle immediately upon its receipt in California." (Ex. A to Def.'s Mot. to Vacate ¶ 4.) He concluded that there were sufficient, serious safety issues with the Vehicle that pre-existed the Vehicle's shipment to California, which a basic safety inspection would have revealed had it been done. The Arbitrator's Award thus rests on the narrow finding that Defendant violated Conn. Gen. Stat. § 14-62(g)[4] due to Defendant's failure to disclose on the Form K-208[5] these issues with

---

[4] That Section provides in part:

> Before offering any used motor vehicle for retail sale, the selling dealer shall complete a comprehensive safety inspection of such vehicle. . . . In the event defects are found but not repaired, and the vehicle is not subject to any warranty under section 42-221, the selling dealer shall note all such defects on the form and may sell such vehicle in "as is" condition. Any vehicle sold in "as is" condition with one or more defects in the equipment or components shall have the retail purchase order, invoice, title and assignment documents prominently marked as "not in condition for legal operation on the highways" with an explanation of defects noted on such retail purchase order, invoice and safety inspection form.

Conn. Gen. Stat. § 14-62(g).

[5] The Form K-208 is required in sales of motor vehicles by Connecticut dealerships. (Ex. C to Def.'s Mot. to Vacate.) It states that "[t]his report shall be used by a CT licensed dealer to comply with CGS 14-62(g) and must be completed in its ENTIRETY" and lists the various components that dealerships must inspect prior to making a vehicle available for sale to the public. (*Id.*)

4

the Vehicle. (Ex. A to Def.'s Mot. to Vacate ¶ 6.) In turn, the Arbitrator found that violation of the Connecticut law constitutes a *per se* violation of CUTPA. (*Id.*) Accordingly, the Arbitrator awarded Plaintiffs $13,016.00 in total damages.[6] (*Id.*)

## II. Discussion

Defendant claims there is good cause to vacate the Arbitrator's Award because the Arbitrator exceeded his powers and the Award is evidence of his manifest disregard of the law.[7] (Def.'s Mot. to Vacate at 5.) Defendant's arguments rest on its assertion that an award of damages for the costs of repairing the Vehicle and loss of its use, as well as the accompanying punitive damages and attorneys' fees, was improper because the car was sold "as is." (Def.'s Mot. to Vacate at 2.) Plaintiffs retort that "[t]he gravamen of Defendant's argument is that it disagrees with the merits of the Arbitrator's decision," (Pl.'s Opp'n at 2) and highlight Defendant's failure to cite any

---

Plaintiffs dispute that they signed or were provided by Defendant the Form K-208. (Ex. C to Miner Aff. at 4). The Arbitrator's Award avoids determining this fact and this Court need not address that factual dispute either.

[6] The itemized damages awarded are as follows:

$2,058.00 for costs of repairing the safety-related defects;
$1,200.00 for loss of use of the vehicle for one year;
$3,258.00 in punitive damages and;
$6,500.00 for reasonable attorneys' fees and costs.

(Ex. A to Pl.'s Mot. to Vacate. ¶6.)

[7] Defendant also argues the Award should be vacated because it was completely irrational, but provides no authority for its position. The Court treats this claim as simply another way of arguing that the Arbitrator exceeded his power or manifestly disregarded the law. *See Yosemite Ins. Co. v. Nationwide Mut. Ins. Co.*, No. 16 CIV. 5290 (PAE), 2016 WL 6684246, at *6 (S.D.N.Y. Nov. 10, 2016).

5

authority supporting its contention that an "as is" disclaimer protects car dealers from such claims as CUTPA. (*Id.* at 5).

### A. The Applicable Standards for Vacatur under the Federal Arbitration Act (the "FAA")[8]

Courts are required to grant an arbitrator's decision significant deference, and the party asking the court to vacate an arbitral award bears a heavy burden of proof. *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003).

The FAA permits vacatur of an arbitration award, as relevant here, "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).[9] For the Arbitrator to have exceeded his authority he must have either (1) considered issues outside those submitted to him by the parties for consideration, or (2) reached issues prohibited by law or the parties' agreement. *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011). Essentially, the Court is tasked with determining only "whether the arbitrators had the power based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that

---

[8] The parties agree that the FAA applies to the instant dispute.

[9] The statute also permits vacatur:

(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them; [and]
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

9 U.S.C. § 10.

issue." *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 262 (2d Cir. 2003) (internal citation and quotation marks omitted). The Second Circuit has directed courts to narrowly read the FAA's authorization to vacate an award when an arbitrator has exceeded his or her powers. *See Matter of Andros Compania Maritima, S.A. (Marc Rich & Co., A.G.)*, 579 F.2d 691, 703 (2d Cir. 1978).

An arbital award may also be vacated "if it exhibits a manifest disregard of the law." *Goldman v. Architectural Iron Co.*, 306 F.3d 1214, 1216 (2d Cir. 2002) (internal citation and quotation marks omitted). Under this standard "the governing law must clearly apply to the facts of the case *as those facts have been determined by the arbitrator.*" *Westerbeke*, 304 F.3d at 213 (emphasis in original); *see also In re S.E. Atl. Shipping Ltd.*, 356 F.2d 189, 191–92 (2d Cir. 1966) ("Under our limited scope of review of arbitration awards, we are bound by the arbitrators' factual findings and by their interpretation of the contract."). Manifest disregard of the law requires finding "something beyond and different from mere error in the law or failure on the part of the arbitrators to understand or apply the law." *Westerbeke*, 304 F.3d at 208 (internal quotation marks omitted).

Courts consider first "whether the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable" and second, whether the arbitrator was aware of, but ignored, that clearly governing legal principle. *See id.* at 209. Under Section 10, an arbitrator's award may also be vacated if it exhibits manifest disregard of the terms of the parties' agreement. *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 452 (2d Cir. 2011). Still, courts are bound by an arbitrator's interpretation of a contract, *Westerbeke*, 304 F.3d at 213, and "[i]f the arbitrator

has provided even a barely colorable justification for his or her interpretation of the contract, the award must stand" *id.* at 222.[10]

### B. Defendant has not Established the Arbitrator Exceeded his Authority or Manifestly Disregarded the law

Defendant essentially argues that the Arbitrator both exceeded his power and manifestly disregarded the law, as well as the parties' agreement because he transformed the parties' "as is" contract into one "with warranties, terms and conditions." (Def.'s Mot. to Vacate at 5.) Specifically, Defendant alleges that the Arbitrator improperly read into the contract provisions requiring Defendant to be the insurer of the Vehicle after it left its lot and to warranty the condition of the Vehicle after it had been shipped to and driven in California. Defendant fails to demonstrate any actual error in the Arbitrator's decision, let alone meet the extremely narrow standards required to vacate an arbitration award.

First, Defendant's contention that the Arbitrator "creat[ed] a new contract between the parties" (*id.*) ignores the fact that the Arbitrator's decision was based on Section 14-62(g), a provision explicitly pertaining to Vehicles sold by dealers in "as is" condition, leaving no question that the Arbitrator recognized the existence of this term in the contract and interpreted it accordingly. Furthermore, Defendant's argument mistakenly focuses on issues that were not critical to the Arbitrator's decision. Violation of Section 14-62(g) required the Arbitrator to find only that the defects in the Vehicle existed at the time it was (or should have been) inspected by

---

[10] Although Defendant purports to be arguing the Arbitrator "manifestly disregarded the law" (Def.'s Mot. to Vacate at 9) in actuality the substance of Defendant's argument is at least in part that the Arbitrator disregarded the terms of the parties' contract. The Court will therefore address both arguments.

Defendant[11] and that, at the time of sale, Defendant failed to identify these issues on the Form K-208 as required. Thus, the Arbitrator's Award focuses only on the condition of the Vehicle at the time of sale, not after it left Defendant's possession, and therefore Defendant's arguments that the Arbitrator inserted provisions requiring Defendant to insure or warranty the car after its sale are irrelevant and meritless.

Defendant's assertion that it cannot be required to compensate Plaintiffs for the cost of repairing the Vehicle despite the Arbitrator's finding that it failed to disclose safety issues with the Vehicle during the sale flouts Connecticut law regarding the sale of a vehicle "as is." Significantly, Defendant cites no case law supporting its claim, nor makes any attempt to address Conn. Gen. Stat. § 42-224(c), which provides in full:

> An "as is" sale of a used motor vehicle waives implied warranties but shall not waive any express warranties, whether oral or written, which may have been made nor shall it affect the dealer's responsibility for any representations which may have been made, whether oral or written, upon which the buyer relied in entering into the transaction.

---

[11] Defendant argues that because the Arbitrator's award makes no express acknowledgement of the almost one month that elapsed between the sale of the vehicle and its inspection in California (the same day it was delivered), he failed to consider the possibility that intervening forces caused the identified damage to the Subaru. (Def.'s Mot. to Vacate at 7.) Plaintiffs presented the Arbitrator with evidence (which was not refuted by Defendant) that after they purchased the car it remained in the possession of Defendant until it was picked up to be shipped to California. There is no evidence that any damage occurred during the transportation of the vehicle across the country, let alone that the Arbitrator ignored such evidence. Rather, the Arbitrator specifically found that "there were sufficient, serious safety issues with the condition of the vehicle that pre-existed the delivery of the vehicle" to Plaintiffs and that Defendant "should have disclosed all, or most, of [those] problems." (Ex. A to Def.'s Mot. to Vacate ¶¶ 5-6.) This suggests he ruled out alternative causes, concluding that the issues with the vehicle existed at the time Defendant inspected it, before it was picked up to be shipped to California.

Conn. Gen. Stat. § 42-224(c). Thus, it is clear that although Plaintiffs purchased the Vehicle "as is," thereby waiving all implied warranties, this does not preclude liability on the part of Defendant for damages incurred as a result of misrepresentations and express warranties made leading to the sale of the Vehicle.[12]

There is simply no basis for vacating the Arbitrator's Award where Defendant cannot prove the Arbitrator either: (1) exceeded his authority by reaching issues beyond those submitted to him by the parties or prohibited by their agreement or law,[13] see *Jock*, 646 F.3d at 122; (2) manifestly disregarded the law in that he knew of but ignored a "well defined, explicit, and clearly applicable" legal principle,[14] see *Westerbeke*, 304 F.3d at 208; or (3) exhibited manifest disregard for the terms

---

[12] Without providing any authority, or pointing to any provision in the parties' contract waiving claims for consequential damages, Defendant suggests the Arbitrator's Award of damages for the loss of the vehicle's use during the time it was not operational was impermissible pursuant to the "as is" contract. (*Id.* at 8.) The Court sees no reason why the Arbitrator could not award these damages given Plaintiffs' reasonable expectation after purchasing what was represented to be a functioning Vehicle that they would have use of that Vehicle. *See Ambrogio v. Beaver Rd. Assocs.*, 267 Conn. 148, 155 (2003) ("Traditionally, consequential damages include any loss that may fairly and reasonably be considered [as] arising naturally, i.e., according to the usual course of things, from such breach of contract itself.") (internal quotation marks and citations omitted) (alteration in original).

[13] The Arbitrator undoubtedly had the authority to interpret the contract at the heart of the dispute and the record indicates that he based his decision upon the submissions of the parties and nothing else. He was also well within his authority to consider Section 42-224(c) and therefore any evidence of express warranties or representations made by Defendant during the course of the sale. Therefore, the Arbitrator's decision did not exceed his powers.

[14] Defendant claims that the Arbitrator's finding that it was liable under CUTPA was in "manifest disregard of contract law" because the Subaru was sold below market value "as is" and without any warranties on the part of Defendant. (Def.'s Mot. to Vacate at 9-10.) Section 42-110b(c) of CUTPA provides that the Department of Consumer Protection (the "DCP") may issue regulations that establish what acts, practices, or methods shall be deemed unfair or deceptive under CUTPA. Regulations regarding the conduct of car dealerships issued by the DCP provide that it is a *per se* violation for a car dealership to fail to comply with a state or federal law concerning

10

of the parties' contract, *see Schwartz*, 665 F.3d 444 at 452. Rather, Defendant's argument is that the Arbitrator misinterpreted the contract between the parties, thereby requiring it to pay damages to Plaintiffs not contemplated by their agreement. As explained above, Defendant misunderstands Connecticut law regarding the sale of a Vehicle "as is" as well as the actual basis of the Arbitrator's Award. Because the Arbitrator's interpretation of the contract is a decision this Court cannot review, *see Banco de Seguros del Estado*, 344 F.3d at 262; *Westerbeke*, 304 F.3d at 213, and Defendants' other arguments for vacatur are similarly without merit, Defendant's Motion to Vacate must be denied.

### III. Conclusion

For the foregoing reasons, Defendant's Motion to Vacate Arbitration Award is DENIED and Plaintiff's Motion for Judgment is GRANTED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 21st day of March 2017.

---

the sale of motor Vehicles. Conn. Agency Reg. § 42-110b-28(b)(23). Therefore the Arbitrator not only did not display manifest disregard for the law, but correctly applied it based upon his finding Defendant violated Conn. Gen. Stat. § 14-62(g).